UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brian KAKOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>Correctional Sergeant GONZALES, et al.,<br><br>Defendants. | Case No.:  24-cv-1314-AGS-BLM<br><br>**ORDER:**<br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF 2)**<br>**(2) DISMISSING IN PART FIRST AMENDED COMPLAINT**<br>**(3) DENYING AS MOOT MOTION FOR LEAVE TO FILE EXCESS PAGES (ECF 3)**<br>**(4) DENYING JUDICIAL-NOTICE REQUEST (ECF 5)**<br>**(5) GRANTING MOTION FOR LEAVE TO AMEND (ECF 6)**<br>**(6) DENYING MOTION TO EXTEND SERVICE (ECF 11)** |

Plaintiff Brian Kakowski's motions to proceed without paying the initial filing fee and for leave to amend are granted. But most of his claims do not survive screening and must be dismissed.

### Motion to Proceed In Forma Pauperis

Parties instituting most civil actions in federal court must prepay $405 in fees, including a $350 filing fee and a $55 administrative fee. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). But if the Court grants leave to proceed *in forma pauperis*, a party may initiate a civil action without prepaying the required fees. *See* 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

Prisoners seeking to proceed *in forma pauperis* (IFP) must submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2).

Unless the prisoner has no assets, the Court uses the certified trust account statement to assess an initial payment of 20% of the greater of (a) "the average monthly deposits to the prisoner's account" or (b) "the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the $350 filing fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2).

In support of his motion, Kakowski provided a copy of his prison certificate and trust account statement. (ECF 4, at 1–4.) During the six months before filing suit, Kakowski had an average monthly balance of $14.79 and average monthly deposits of $10.32. (*Id.* at 1.) At the time he filed suit, he had an available account balance of $2.53. (*Id.*) The Court finds Kakowski has established an inability to pay the required filing fee, and the Court grants his IFP motion. While the Court assesses no initial payment, Kakowski must pay the full $350 filing fee in installments from his trust account as set forth in 28 U.S.C. § 1915(b)(2).

## MOTION FOR LEAVE TO AMEND

Only two weeks after filing suit, Kakowski moved to amend the complaint and attached a proposed first amended complaint. (*See* ECF 6.) A plaintiff may amend "once as a matter of course" under appropriate time constraints or with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1), (2). Even though Kakowski moved to amend his complaint within the time allowed to do so without leave under Rule 15(a)(1), a motion to amend with leave under Rule 15(a)(2) "filed first in time" "cannot be construed as a waiver or exhaustion of his automatic right to amend under 15(a)(1)." *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). So instead of construing Kakowski's request as an as-of-right amendment, the Court considers whether to grant leave.

Generally, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In fact, "[a]bsent prejudice . . . there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Given the early stage of these proceedings and the

fact that [plaintiff] has yet to serve any defendant in this action, the Court finds that the liberal policy in favor of amendment merits" granting leave to amend. *See Wiggins v. Off. of Workers Comp. Programs*, No. 21-CV-2079 JLS (MDD), 2022 WL 463918, at *4 (S.D. Cal. Feb. 15, 2022).[1]

## SCREENING

### A. Legal Standard

The Court must screen Kakowski's amended complaint and dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). That is, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

### B. Kakowski's Allegations

According to the amended complaint, on the morning of January 11, 2023, after all the inmates were "released for breakfast," defendant Correctional Sergeant Gonzales ordered a "random cell search" of Kakowski's 6-person cell. (ECF 6-1, at 10.) A "hypodermic needle" was allegedly found "under" Kakowski's "bunk or bunk area," and Kakowski received a Rules Violation Report. (*Id.*)

Kakowski claims that the search was "not in any way random" but part of a conspiracy between Gonzales and another defendant, Correctional Officer Torres. (ECF 6-1, at 10.) As it turns out, on the "very same day [the] cell search was conducted,"

---

[1] Because the original complaint is no longer operative, Kakowski's motion to allow that complaint to exceed 15 pages (ECF 3) is denied as moot. *See* CivLR 8.2(a) (setting page limits for prisoner civil-rights cases).

Kakowski had "a settlement conference" in a civil-rights case he was bringing against prison personnel for "failure to protect" Kakowski from Hepatitis-C exposure. (*Id.* at 10–11.) Going into the settlement conference, Kakowski claims the parties "had a number of 4–5 thousand" dollars in mind for settlement. (*Id.* at 11.) But Kakowski says that "a few hours after [the] cell search," Gonzales was setting up the conference call for him and stated, "so much for your big pay out." (*Id.*) At the settlement conference, according to Kakowski, the Magistrate Judge revealed that "over the weekend" the Attorney General "had a change of heart" and that the new settlement offer was $500 "or go to trial." (*Id.*)

At an administrative hearing on January 28, 2023, defendant Lieutenant Moore adjudged Kakowski guilty of the rule violation and penalized him "120 days" of custody credit, "which created an atypical and significant hardship." (ECF 6-1, at 12.) During the hearing, Moore and Kakowski viewed video footage of the cell search, but it was unclear from the video "how" or "where" Torres got the syringe. (*Id.* at 14.) Moore then placed a phone call to Torres, but turned "his chair & back" on Kakowski, so Kakowski couldn't hear the conversation. (*Id.* at 15.) Moore also denied Kakowski's requests "to ask [Torres] a question" and "for Torres to repeat what he just said" on the phone "for the record." (*Id.*) In addition, Kakowski claims that Moore based his guilty finding on fabricated evidence and a "mental health" evaluation containing "false statements" penned by an "unknown author" that turned out to be defendant psychiatrist Diaz. (*Id.* at 19.) Finally, defendants Bahro and Gates—the mental health chief and appeals chief, respectively—allegedly allowed psychiatrist Diaz to make "a false, untrue, uncorroborated report," and they failed to correct it. (*Id.*)

Although Kakowski's lost 120 days of custody credit were eventually "restored," (ECF 6-1, at 12), he now brings claims against Gonzales, Torres, Diaz, Moore, Bahro, Gates, and Associate Director of Appeals Moseley for retaliation and violations of his constitutional rights to due process and access to courts, (*see id.* at 18–20).

C.  **Discussion**

   1. *Retaliation*

Kakowski's retaliation claim against Sergeant Gonzales and Officer Torres survives screening. "Within the prison context, a viable" retaliation claim "entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

First, Kakowski plausibly alleges an adverse action by state actors. He claims that Gonzales and Torres searched his cell and planted the syringe in retaliation for Kakowski's anticipated civil-rights-suit settlement. "[A]lthough cell searches are a routine part of prison life, a cell search may nonetheless constitute an adverse action as such an action need not be an independent constitutional violation." *Cejas v. Paramo*, No. 14-cv-1923-WQH-WVG, 2017 WL 1166288, at *6 (S.D. Cal. Mar. 28, 2017) (cleaned up), *report and recommendation adopted*, No. 14-cv-1923-WQH-WVG, 2017 WL 3822013 (S.D. Cal. Sept. 1, 2017). Second, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114. The cell search here purportedly took place on the same day as Kakowski's settlement conference, and Gonzales and Torres "were aware of plaintiff's civil case" since they were both present when Kakowski "was speaking with [the] legal coordinator" about his case. (ECF 6-1, at 13.) At this stage, these facts raise a reasonable inference of retaliatory intent, satisfying the "because of" element.

Third, Kakowski's settlement discussions in his then-pending lawsuit were protected activities. The "most fundamental of the constitutional protections that prisoners retain" includes "the First Amendment right[] to . . . pursue civil rights litigation in the courts." *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir. 2017). Fourth, Kakowski has adequately

alleged that the correctional officers' "acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114. This element is satisfied by Kakowski's claims of "more than minimal" "harm" in the cell search, *see id.*, especially considering Gonzales's purported remark: "so much for your big pay out," (ECF 6-1, at 11); *see also Knox v. Castaneda*, No. 13-cv-2985-WQH-RBB, 2018 WL 6649457, at *5 (S.D. Cal. Dec. 18, 2018) ("[T]he Court finds it likely an inmate of reasonable firmness would hesitate to pursue grievances against correctional officers if faced with the possibility of a cell search and confiscation of property for doing so."), *report and recommendation adopted*, No. 13-cv-2985-WQH-RBB, 2019 WL 338913 (S.D. Cal. Jan. 28, 2019); *Haddix v. Burris*, No. C-12-1674 EMC (PR), 2015 WL 1055768, at *6 (N.D. Cal. Mar. 10, 2015) ("[A] reasonable jury could conclude that knowing that one's cell would be searched if one filed an inmate appeal would chill a person of ordinary firmness from future First Amendment activities.").

Fifth and finally, a "plaintiff successfully pleads" the absence of a legitimate correctional goal "by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious." *Watison*, 668 F.3d at 1114–15. "[C]ell searches generally advance legitimate penological interests." *Cejas*, 2017 WL 1166288, at *7. But by alleging that the cell search "was not in any way random" and done with "retaliatory motive," Kakowski successfully pleads that Torres's and Gonzales's "use of [the cell search] procedure[] was pretextual and not a reasonable advancement of the legitimate penological goal." *See Johnson v. Ryan*, 55 F.4th 1167, 1202 (9th Cir. 2022); (*see* ECF 6-1, at 10). Thus, Kakowski states a claim against Gonzales and Torres for retaliation.

Kakowski does not, however, state a retaliation claim against any other defendant. Kakowski claims that Moore, as a supervisor, "participated and perpetuated constitutional violations" by finding him guilty on false grounds. (ECF 6-1, at 16.) And Moseley "allow[ed] the ongoing constitutional violations" and "failed at her assigned job." (*Id.* at 18.) But these "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Pena v. Gardner*, 976 F.2d

469, 471 (9th Cir. 1992). Nor does Kakowski mention Diaz, Bahro, or Gates in any context that could possibly be construed as asserting a retaliation claim against them. (*See generally* ECF 6-1.) So the retaliation claim is dismissed with leave to amend as to all defendants, except Torres and Gonzales. *See Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (holding that a pro se plaintiff deserves leave to amend unless "the pleading could not possibly be cured by the allegation of other facts").

### 2. *Due Process*

Kakowski fails to state a due-process claim based on the Rules Violation Report and related hearings. (*See* ECF 6-1, at 12–19.) Because Kakowski "ultimately did not lose any good time credits," "any procedural error was corrected through the administrative appeal process." *See Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (collecting cases). And to the extent Kakowski's due-process claim is premised on the use of false or fabricated evidence, Kakowski "does not have a constitutional right to be free from wrongfully issued [and falsified] disciplinary reports." *See Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997); *see also Garrott v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) (holding that there is no "clearly established federal law that a prisoner has a right to be free from false accusations" when the inmate received a hearing on those charges); *accord Freeman v. Rideout*, 808 F.2d 949, 949 (2d Cir. 1986) (holding that "the filing of unfounded or false charges by a prison correctional officer against a prison inmate" is "not *per se* a constitutional violation under section 1983"). So, Kakowski's due-process claim is dismissed without leave to amend. The "allegation of other facts . . . could not possibly cure" these deficiencies. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### 3. *Access to Courts*

Kakowski's access-to-courts claim likewise does not survive. The Supreme Court recognizes "two categories" of access-to-courts claims: "forward-looking" and "backward-looking." *Christopher v. Harbury*, 536 U.S. 403, 413, 414 n.11 (2002). "Backward-looking" claims cover "specific litigation [that] ended poorly," or that was

1 | never commenced, due to official interference. *Id.* at 413–14. The goal of this species of
2 | claim is monetary relief for the prior thwarted lawsuit. Since Kakowski is claiming that the
3 | defendants interfered with obtaining a favorable settlement in a previously filed case,
4 | Kakowski is bringing a backward-looking claim.

5 | "[W]hen the access claim (like this one) looks backward, the complaint must identify
6 | a remedy that may be awarded as recompense but not otherwise available in some suit that
7 | may yet be brought." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Kakowski
8 | contends that the government was amendable to settling his prior case for up to $5,000, but
9 | that offer dropped to $500 after the hypodermic needle was allegedly planted in his cell.
10 | (*See* ECF 6-1, at 11.) Kakowski fails to allege whether the case actually settled and, if so,
11 | for what amount. This leaves the Court "to guess . . . at the remedy being sought
12 | independently of relief that might be available." *Christopher*, 536 U.S. at 418. Thus,
13 | Kakowski's access-to-courts claim is dismissed, but with leave to amend.

### JUDICIAL-NOTICE REQUEST

Kakowski requests judicial notice of various items. (*See generally* ECF 5.) "As the Court finds [none] of the documents referenced in the [request] necessary to resolve this [m]otion, the [judicial-notice request] is denied." *See Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 701 n.8 (C.D. Cal. 2020), *aff'd*, No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023).

### MOTION FOR EXTENSION OF SERVICE

Finally, Kakowski asks this Court to "extend service of summons/complaint to any possible defendants." (ECF 11, at 2.) That request is denied as premature. "[T]he Court will not issue a summons for service unless and until the [new] complaint passes screening pursuant to 28 U.S.C. § 1915(e)(2) or § 1915A(b). . . ." *See Dean v. Appellate Defenders*, No. 24-CV-2173-MMA (KSC), 2024 WL 5081636, at *1 (S.D. Cal. Dec. 11, 2024).

### CONCLUSION

Kakowski's motions to proceed IFP and for leave to amend are **GRANTED**. The first amended complaint is dismissed in part:

1. Kakowski's retaliation claim remains against defendants Torres and Gonzales. In all other respects, the retaliation claim is **DISMISSED** with leave to amend.
2. The due-process claim is **DISMISSED** *without* leave to amend.
3. The access-to-courts claim is **DISMISSED** with leave to amend**.**

By **February 19, 2025**, Kakowski must file any second amended complaint, remedying the identified deficiencies. Any such second amended complaint "must be complete in itself without reference" to the prior complaint. CivLR 15.1(a). Any claims that are dismissed here with leave to amend—and are not repleaded in the second amended complaint—will be considered abandoned. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) ("[F]or any claims voluntarily dismissed, we will consider those claims to be waived if not repled."); *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946 (9th Cir. 2013) ("Because [plaintiff] did not voluntarily renew the[] claims" dismissed with leave to amend, those claims were "effectively abandoned.").

Dated: January 22, 2025

_____
Hon. Andrew G. Schopler
United States District Judge